THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, *v.* JACOB JAY LEVINE, Defendant.

THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, *v.* DANIEL GINSBURG, Defendant.

County Court, Kings County, June 25, 1937.

*Samuel S. Liebowitz*, for the motion.

*William F. X. Geoghan, District Attorney*, and *Ralph K. Jacobs, Assistant District Attorney*, opposed.

FITZGERALD, J. The defendants have been indicted separately; Levine for forgery in the second degree and grand larceny in the second degree; Ginsburg for forgery in the second degree and fraud in taking a false acknowledgment.

The defendants are attorneys at law actively in practice, and Ginsburg is a notary public.

The indictments result from the same transactions.

It appears that Mendora Lewis and Noah Lewis (husband and wife) were plaintiffs in an action for damages based on negligence.

The action was tried in the Supreme Court and resulted in a disagreement. Mendora Lewis, the injured person, was in such a condition physically she was unable to testify.

Levine was attorney of record; Ginsburg, a young lawyer, was employed in his office. An experienced and prominent trial lawyer was engaged as counsel and conducted the trial.

On October 10, 1936, Levine, by telephone, agreed with the attorney for a casualty company to settle the case for $500. A general release, purporting to have been executed by Mendora Lewis on said day, was subsequently forwarded to the attorney for the defendant in the negligence action, and in due course a check for $500, payable to Mendora and Noah Lewis and Levine, was sent to Levine. Subsequently the check, purporting to have been indorsed by both the Lewis's and by Levine, was deposited by Levine in his account.

Mendora Lewis died late in the night of October tenth. Thereafter Levine paid the undertaker, who prepared and shipped the remains south for burial, deducted certain sums which had been advanced to Lewis, paid him the balance due, and retained for his services $250.

The action of Mendora Lewis did not abate by her death. It could have been revived by her representatives. (Dec. Est. Law, § 119, as amd. by Laws of 1935, chap. 795.)

The indictments resulted from the testimony of Noah Lewis that he accompanied Levine to the hospital on Thursday or Friday before Mendora Lewis' death on Saturday, the tenth of October; that at the time she was in a comatose condition and unable to speak; that he did not go to the hospital on the tenth with Levine and Ginsburg, and that his wife had never signed nor executed the release, nor had he signed the release nor indorsed the check.

A number of nurses and certain doctors testified as to the woman's condition on the tenth; none had a very distinct recollection of the case, some none at all. Their testimony was not definite and was largely expressive of opinions of what Mendora's condition must have been and the probabilities of her ability to understandingly execute a release.

Levine had voluntarily made a statement to the district attorney, which was submitted to the grand jury. He described the negotiations for the settlement, of his visit to the hospital with Noah Lewis and Ginsburg, of what happened when they visited the deceased. He asserted that Mendora was conscious, that she was advised of the proposed settlement by her husband, that she had acquiesced in it; that the release was explained to her, and that her husband guided her hand in making her mark, and that she then acknowledged its execution.

Asked as to her condition at the time, Levine stated that it was very bad; but that had not alarmed him, as her condition had been serious since the accident, and that at the time of the trial her condition was such she was unable to testify.

Noah Lewis repeatedly stated that he could neither read nor write. His ability to write was conclusively established by the evidence before the grand jury.

After Lewis had testified before the grand jury he was examined at the request of the district attorney, outside the grand jury room, by an able and experienced alienist and psychiatrist.

This physician was then called before the grand jury. He testified that Noah Lewis was a paretic; that he had *arcos senilis,* which indicated that the blood vessels of the brain are hardening and disintegrating; " that his memory is shot to pieces; " that there is no doubt that in paresis the memory is definitely faulty.

In addition to the evidence before the grand jury as to Lewis' ability to write, which included specimens written in the grand jury room, on the motion for an inspection of the grand jury minutes, I had before me photostatic copies of registration books in which he had signed his name when he voted at general elections.

Lewis is not corroborated in any respect, except as to the condition of his wife on October tenth. The evidence is not conclusive that Mendora Lewis was unable on that day to understand what she was doing or to execute the release.

It is not contended that the action brought by her was solicited or dishonest; it is not claimed that the settlement was fraudulent; there is no pretense that the attorney cheated Lewis, or any one else, in the distribution of the moneys received in settlement.

Under such circumstances it is my opinion that indictments which depend entirely upon the testimony of Lewis — a paretic — unsupported in essential particulars, are as a matter of law without justification; that there was insufficient competent evidence to justify the indictments, and they must fall.

Indictments dismissed.